EUGENE G. IREDALE: SBN 75292
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221

Attorney for Defendant George Walther-Meade

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### (Honorable Catherine Ann Bencivengo)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 3:23-cr-00231-CAB |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF POINTS AND** |
| ) | **AUTHORITIES IN SUPPORT OF** |
| v. ) | **MOTION FOR DISCLOSURE OF** |
| ) | ***BRADY* AND *GIGLIO* MATERIALS** |
| GEORGE WALTHER-MEADE, ) | |
| ) | **Date: June 16, 2023** |
| ) | **Time: 10:30 a.m.** |
| Defendant. ) | |
| ) | |

1
2

TABLE OF CONTENTS

3
4

I. INTRODUCTION ..................................................................................1

5
6

II. THE GOVERNMENT SHOULD DISCLOSE ALL EXCULPATORY
EVIDENCE AT A TIME WHICH PERMITS REASONABLE AND EFFECTIVE
USE OF THE EVIDENCE .......................................................................1

7
8

III. SPECIFIC REQUESTS FOR DISCLOSURE........................................6

9

1. Criminal History ...............................................................................6

10
11

3. Promises of Consideration ..................................................................7

12
13

4. Vulnerability and Threats ...................................................................9

14

5. Identification of Prior Statements .......................................................12

15
16

6. Identification of all Former Testimony of Special Witnesses ...........................13

17

7. Defects in Capacity to Testify............................................................14

18

8. Further Impeaching Evidence ............................................................15

19

9. Non-witness Declarant .....................................................................16

20
21

10. Henthorn Material .........................................................................17

IV. CONCLUSION................................................................................18

22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Table of Authorities

**Cases**

*Alford v. United States*, 282 U.S. 687, 693 (1931) ................................................9, 11

*Annunziato v. Manson* 566 F.2d 410 (2d Cir. 1977) ............................................7

*Azbill v. Pogue* 534 F.2d 195, 196 (9th Cir. 1976) ..............................................8

*Barnard v. United States* 342 F.2d 309, 314-17 (9th Cir. 1965) ..........................9

*Bradford v. United States* 271 F.2d 58 (9th Cir. 1959) ......................................12

*Brady v. Maryland* 373 U.S. 834 (1963) ................................................1, 2

*Calley v. Callaway* 519 F.2d 184 (5th Cir. 1975) ..............................................1

*Chavis v. North Carolina*,637 F.2d 213, 225-226 (4th Cir. 1980) ..............8, 12

*Davis v. Alaska* 415 U.S. 308 (1974)................................................ 10, 11

*Davis v. Heyd* 479 F.2d 446 (5th Cir. 1973) ......................................................12

*Emmett v. Rickets* 397 F. Supp. 1025, 1050 (N.D. Ga. 1975) ..............................9

*Farkas v. United States*, 2 F.2d 644, 647 (6th Cir. 1924)....................................9

*Giglio v. United States* 405 U.S. 150 (1972) ........................................ 2, 5, 7

*Green v. McElroy*, 360 U.S. 474, 496 (1959)....................................................11

*Greene v. Wainwright* 634 F.2d 272 (5th Cir. 1981)........................................ 10, 16

*Johnson v. Brewer* 521 F. 2d 556 (8th Cir. 1975) ............................................14

*Kyles v. Whitley* 514 U.S. 419 (1995)..............................................................1

*Lorraine v. United States* 396 F.2d 335 (9th Cir. 1968)......................................3

*Martinez v. Wainwright* 621 F.2d 184 (5th Cir. 1980) ..................................4, 5

*McConnell v. United States* 393 F.2d 404 (5th Cir. 1968) ................................14

*Mesarosh v. United States* 352 U.S. 1 (1956)..................................................16

*Monroe v. Blackburn* 607 F.2d 148 (5th Cir. 1979) ........................................12

*Napue v. Illinois* 360 U.S. 264 (1959) ........................................ 2, 3, 5

*Patriarca v. United States* 402 F.2d 314, 319 (1st Cir. 1968)..............................9

*United States ex. rel. Butler v. Maroney* 319 F. 2d 622 (3d Cir. 1963)................12

*United States v. Agurs,* 427 U.S. 97 (1976)......................................................1

*United States v. Alvarez-Lopez* 559 F.2d 1155 (9th Cir. 1977)................. 7, 10, 13

*United States v. Antone* 603 F.2d 566 (5th Cir. 1979)....................................5, 8

*United States v. Auten* 632 F.2d 478 (5th Cir. 1980)................................ 3, 4, 6, 7

*United States v. Bagley* 473 U.S. 667 (1985) ..................................................2

*United States v. Bonanno* 430 F.2d. 1060 (2d Cir. 1970)...................10

*United States v. Bovain* 708 F.2d 606, 613-14 (11th Cir. 1983) .............16

*United States v. Brainard* 690 F.2d 1117, 1127-28 (4th Cir. 1982)..........16

*United States v. Butler* 567 F.2d 885 (9th Cir. 1978) .........................6

*United States v. Cadet* 727 F.2d 1454 (9th Cir. 1984) ........................17

*United States v. Carday* 466 F.2d 1191 (9th Cir. 1972) .......................6

*United States v. Carter* 566 F.2d 1265, 1269, 1271 (5th Cir. 1978) ..........9

*United States v. Cole* 617 F.2d 151, 153-154 (5th Cir. 1980) .................7

*United States v. Croucher* 532 F. 2d 1042, 1044-46 (6th Cir. 1976) ..........11

*United States v. Crumley* 565 F.2d 945, 949-50 (5th Cir. 1978)...............10

*United States v. Dicarlo* 575 F.2d 952, 958-960 (1st Cir. 1978).................8

*United States v. Dillard* 419 F.Supp. 1000 (N.D. Ill 1976)......................8

*United States v. Disston* 582 F.2d 1108 (7th Cir. 1978)..........................8

*United States v. Elmore* 423 F.2d 775, 779 (4th Cir. 1970) .....................2

*United States v. Garcia* 531 F.2d 1303, 1306-07 (5th Cir. 1976) ..............11

*United States v. Garza* 574 F. 2d. 298, 301-02 (5th Cir. 1978)..................8

*United States v. Gerard* 491 F.2d 1300 (9th Cir. 1974) ......................3, 10

*United States v. Gleason* 265 F. Supp. 880, 887 (S.D.N.Y. 1967).............12

*United States v. Glenn* 473 F. 2d 191, 195 & n.l. (D.C. Cir. 1972) ..........17

*United States v. Gurney* 393 F. Supp. 683 (M.D. Fla. 1974) ..................11

*United States v. Haderlein* 118 F. Supp. 346 (N.D. Ill. 1953) ................11

*United States v. Haggett* 438 F.2d 396, 400 (2d Cir.1971) ...................16

*United States v. Hart* 344 F. Supp. 522 (E.D.N.Y. 1971) .....................15

*United States v. Henthorn* 931 F.2d 29 (9th Cir. 1991)........................17

*United States v. Hitchmon* 609 F.2d 1098 (5th Cir. 1979) ....................16

*United States v. Houston* 339 F. Supp. 762, 765-66 (N.D. Ga. 1972).........12

*United States v. Kartman* 417 F. 2d 893, 897 (9th Cir. 1969)..................16

*United States v. Kinnard* 465 F.2d 566, 570-74 (D.C. Cir. 1972)...........15

*United States v. Leake* 642 F.2d 715, 718-719 (4th Cir. 1981) ................7

*United States v. Leichtfuss* 331 F. Supp. 723, 736 (N.D. Ill. 1971) ...........7

*United States v. Leja* 568 F.2d 493 (6th Cir. 1977)............................8

*United States v. Librach* 520 F.2d 550 (8th Cir. 1975) ........................8

*United States v. Lindstrom* 698 F. 2d 1154, 1159-68 (11th Cir. 1983) ........15

*United States v. Mayer* 556 F.2d 245, 248 (5th Cir. 1977)................ 7, 9, 14

*United States v. McCrane* 547 F. 2d 204 (3d Cir. 1976) ............................9
*United States v. Mele* 462 F. 2d 918 (2d Cir. 1972) ................................8
*United States v. Miller* 529 F.2d 1125, 1128 (9th Cir. 1976) .................13
*United States v. Padgent*, 432 F.2d 701 (2d Cir. 1970) ..........................10
*United States v. Partin* 493 F.2d 750, 757-760 (5th Cir. 1974) ............. 8, 14, 15
*United States v. Patnes* 408 F. Supp. 440, 44-445 (S.D.N.Y. 1975) .........8
*United States v. Perdomo* 929 F.2d 967 (3d Cir. 1991) ............................3
*United States v. Pollack* 534 F.2d 964, 973 (D.C. Cir.1976) ...................2
*United States v. Rinn* 586 F.2d 113 (9th Cir. 1978) ................................5
*United States v. Rose* 526 F.2d 745 (8th Cir. 1975) ................................6
*United States v. Sutton* 542 F.2d 1239 (4th Cir. 1976) ............................9
*United States v. Wolfson* 437 F.2d 862, 874-5 (2d Cir. 1970)...................8
*Wheeler v. United States* 351 F.2d 946 (1st Cir. 1965) ............................9
*Williams v. Griswald* 743 F. 2d 1533 (11th Cir. 1984) ............................9
*Wilson v. United States* 232 U.S. 563, 568 (1914) .................................15
*Youngblood v. West Virginia*, 547 U.S. 867 (2006) ...............................2

## Statutes

21 U.S.C. §§ 7122 and 7623 ....................................................................9
*Jencks Act* 18 U.S.C. § 3500 ...............................................................13

## Other Authorities

*3 Wigmore, Evidence* § 884 at 376-77 (3d ed. 1940) ............................18
3A J. *Wigmore, Evidence* § 940, p. 775 (Chadbourne rev. 1970) ..........11
H.R. Rep. 1597, 93d Cong., 2d Sess. 9 (1974) .........................................7
*McCormick, Evidence* § 33 at 66 (2d ed. 1972)....................................15
*McCormick, Evidence* § 34 at 67 (2d ed. 1972).............................. 13, 14
*McCormick, Evidence* § 37 at 73-74 (2d ed. 1972) ...............................18
*McCormick, Evidence* § 40 at 78-80 (23d ed. 1972) .............................10
*McCormick, Evidence* § 52 at 83 (2d ed. 1972).....................................8
*Smaltz, Tactical Considerations for Effective Representation During a Government Investigation* 16 Amer. Crim. L. Rev. 383, 398-403 (1979) ...............12

## Rules

Fed R. Evid. 806 ..................................................................................17

Fed. R. Crim. P. 16 (a) (1) (D) ....................................................................16

Fed. R. Evid. 612 .........................................................................................13

Fed. R. Evid. 801 (d) (1) and 806 ...............................................................13

Fed.R. Evid. 608 (b) ......................................................................................8

Rule 609 of the Federal Rules of Evidence ...................................................7

Rules 608 and 609 .......................................................................................18

## I. INTRODUCTION

Defendant Walther-Meade asks the Court to order the government to produce *Brady* and *Giglio* material thirty days before trial in this case. The request for pretrial production is designed to allow sufficient time, for defendant George Walther-Meade.

## II. THE GOVERNMENT SHOULD DISCLOSE ALL EXCULPATORY EVIDENCE AT A TIME WHICH PERMITS REASONABLE AND EFFECTIVE USE OF THE EVIDENCE

In *Brady v. Maryland* 373 U.S. 834 (1963), the United States Supreme Court announced the rule that:

> Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 8

*Brady*, along with the other means of criminal discovery available to defendant, mandates the disclosure of important information known or available to the prosecutor in order to promote the fair administration of justice. *Calley v. Callaway* 519 F.2d 184 (5th Cir. 1975). The Supreme Court has subsequently expanded the duty of the prosecutor to include all exculpatory material, whether or not it was specifically requested by the defendant. *Kyles v. Whitley* 514 U.S. 419 (1995); *United States v. Agurs*, 427 U.S. 97 (1976).

The prosecution's affirmative duty to disclose evidence favorable to a defendant traces its origin to early 20th-century strictures against misrepresentation and is most prominently associated with the Court's decision in

*Brady v. Maryland* 373 U.S. 83 (1963). This requirement of candor by the sovereign encompasses information which bears upon the credibility of its witnesses as well as matter directly material to guilt or innocence. *United States v. Bagley* 473 U.S. 667 (1985); *Giglio v. United States* 405 U.S. 150 (1972); *Napue v. Illinois* 360 U.S. 264 (1959). In *Youngblood v. West Virginia*, 547 U.S. 867 (2006), the Court held explicitly that the duty to disclose applies to impeachment as well as exculpatory evidence. 547 U.S. 867, 869 citing *United States v. Bagley* 473 U.S. 667, 676 (1985). The duty applies to the police as well as the prosecutor. *Id.* at 869-870. The prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case. *Id.*

The government should turn over to the defendant any material which might possibly fall under the *Brady* rule.  Disclosure of information impeaching witnesses' credibility must be timed to enable effective preparation for trial. *E.g., United States v. Bagley* 473 U.S. 667. As pointed out in *United States v. Pollack* 534 F.2d 964, 973 (D.C. Cir.1976) (Lumbard, J., sitting by designation):

> (d)isclosure by the government must be made at such time as to allow the defense to use the favorable material effectively in preparation and presentation of its case, even if satisfaction of this criterion requires pretrial disclosure. *See, e.g. United States v. Elmore* 423 F.2d 775, 779 (4th Cir. 1970).

Defendant Walther-Meade seeks an order for pretrial disclosure because the effective use of the *Brady* and *Giglio* material requires time to review, understand and assimilate it.  It also requires adequate time to conduct defense investigation of factual avenues involved in, or suggested by, the material.  Because of constraints of time and distance, mid-trial production of *Giglio* material will preclude adequate factual follow-up, which would be facilitated by timely pre-trial production.

In *Napue v. Illinois* 360 U.S. 264 (1959), the Supreme Court emphasized the importance of impeachment evidence to a determination of the defendant's guilt or innocence:

> The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.
> 360 U.S. at 269.

Evidence used to impeach the credibility of a witness includes a witness' past criminal history. *Lorraine v. United States* 396 F.2d 335 (9th Cir. 1968). In *Lorraine v. United States*, *supra*, the court emphasized that "[e]vidence available for use at the trial may be material within the meaning of [the *Brady*] rule, even though it goes only to the credibility of a witness." *Lorraine v. United States* 396 F.2d at 339.

Similarly, in *United States v. Gerard* 491 F.2d 1300 (9th Cir. 1974), the Ninth Circuit Court of Appeals reaffirmed this position stating:

> The basic principle is clear enough; the government is obliged to disclose pertinent material evidence favorable to the defense, and this applies not only to matters of substance, but to matters relating to the credibility of the government witnesses.
> 491 F.2d at 1302.

In *United States v. Auten* 632 F.2d 478 (5th Cir. 1980), a defendant's conviction was reversed because the government failed to disclose the past criminal record of one of its witnesses. *See also United States v. Perdomo* 929 F.2d 967 (3d Cir. 1991). The government denied any knowledge of this prior record, on the grounds that no background report by the F.B.I. had been made,

nor had the government directed an inquiry to the National Crime Information

Center. In rejecting these contentions, the Court found that:

> We conclude that the government did have knowledge
> for purposes of the disclosure requirements of the
> criminal record, whatever it may be, of Michael Roy
> Taylor, they called as a witness, and that it withheld or
> suppressed that available information. In reaching this
> conclusion we do not assign bad motive or bad faith to
> the prosecution. We do underscore, however, the heavy
> burden of the prosecutor to be even-handed and fair in all
> criminal proceedings . . . The alleged criminal record of
> Michael Roy Taylor would have been of value in
> impeaching his credibility, particularly in light of his
> specific denial of any other conviction.
> 632 F.2d at 481-482.

Similarly, in *Martinez v. Wainwright* 621 F.2d 184 (5th Cir. 1980), the

defendant specifically requested the deceased's "rap sheet" before his trial for

murder, alleging that the information was material to his self-defense claim. The

prosecutor claimed that he was not in possession of the rap sheet and was

unaware of its existence. During trial it was determined that the medical

examiner's office had the rap sheet. The court held that:

> The rule of *Brady* would be thwarted if a prosecutor were
> free to ignore specific requests for material information
> obtainable by the prosecutor from a related governmental
> entity . . . That the prosecutor was personally unaware of
> the existence of the rap sheet does not excuse his
> misrepresentation to the trial court that a rap sheet was
> unavailable.
> Our conclusion that the prosecutor may be deemed to
> have been in possession of the rap sheet, by virtue of its
> retention by the medical examiner while the prosecutor
> assured all that no such document existed effectuates the
> purpose of *Brady* and *Agurs*. A contrary holding would
> enable the prosecutor to avoid disclosure of evidence by
> the simple expedient of leaving relevant evidence to

4

repose in the hands of another agency while utilizing his
access to it in preparing his case for trial.
621 F.2d at 187-188.

The existence and terms of any agreement with any witness proposed to be
utilized at trial must also be made known to defendant. *Giglio v. United States*
405 U.S. 105 (1972); *United States v. Rinn* 586 F.2d 113 (9th Cir. 1978); *Napue
v. Illinois* 360 U.S. 264 (1959). This information would include all sources of
payments made to witnesses regarding the case.

In *United States v. Antone* 603 F.2d 566 (5th Cir. 1979), the defendant
argued that the witness had testified falsely concerning the source of payment for
his attorney. The witness claimed that he had personally paid for his attorney,
whereas, in fact, the State of Florida, through the Florida Department of Criminal
Law Enforcement, had paid the witness' legal fees. The Assistant United States
Attorney who prosecuted the case was not informed of this fact until after the
case had been completed. The prosecution argued that the government could not
be judged negligent for the non-disclosure of the payment of the witness'
attorney's fees when the prosecution lacked knowledge of the source of the
payment. In disallowing this argument, the *Antone* court stated that:

> In the instant case, extensive cooperation between the
> investigative agencies convinces us that the knowledge of
> the state team that Haskew's [the witness'] lawyer was
> paid from state funds, must be imputed to the federal
> team. We have little difficulty in concluding that the state
> investigators functioned as agents of the federal
> government under the principles of agency law utilized in
> Giglio. The state agents were in the real sense members
> of the prosecutorial team.
> Because the prosecution should have known of the
> falsehood, the standard to be applied is whether it is
> reasonably likely that the truth would have produced a
> different verdict.
> 603 F.2d at 570.

In *United States v. Butler* 567 F.2d 885 (9th Cir. 1978), the court reversed a defendant's conviction because the government's failure to disclose to defendant its intention to dismiss charges against its key witness in return for favorable testimony from that witness. The *Butler* court stated:

> We also conclude that the motion for a new trial should have been granted because of the prejudicial effect of the non-disclosure of the requested information on the defense's ability to present its case fairly. While argument and speculation by counsel cannot be considered as evidence, the defense was denied the opportunity to present impeaching evidence which could seriously have affected the jury's assessment of the key prosecution witness' credibility.
> 567 F.2d at 890.

### III. SPECIFIC REQUESTS FOR DISCLOSURE

#### 1. Criminal History

Defendant's request for information regarding prior criminal convictions and juvenile adjudications invokes a classic avenue of impeachment within the ambit of Rule 609 of the Federal Rules of Evidence. The Conference Committee Report to that rule speaks in terms of the "need for the trier of the fact to have as much relevant evidence on the issue of credibility as possible." H.R. Rep. 1597, 93d Cong., 2d Sess. 9 (1974). *Accord United States v. Auten* 632 F. 2d 478 (5th Cir. 1980). The inclusion of "guilty verdicts" in the request results from decisions authorizing their use, even though not reduced to judgment, for purposes of impeachment. *United States v. Rose* 526 F.2d 745 (8th Cir. 1975); *United States v. Carday* 466 F.2d 1191 (9th Cir. 1972). Discovery should extend to search of basic law enforcement information data banks and production of any and all so called "rap sheets" for the witness. *United States v. Auten* 632 F.2d 478 (5th Cir.

1980) (NCIC criminal records); *United States v. Leichtfuss* 331 F. Supp. 723, 736 (N.D. Ill. 1971); *see United States v. Alvarez-Lopez* 559 F.2d 1155 (9th Cir. 1977).

### 2. Prior Bad Acts

The Federal Rules of Evidence give the Court discretion to permit a defendant cross-examination of a witness as to specific instances of misconduct, so called "bad acts," even though such behavior does not amount to felony conviction, if the evidence impeaches the witness' truthfulness. Fed.R. Evid. 608 (b); *United States v. Leake* 642 F.2d 715, 718-719 (4th Cir. 1981) (reversing conviction); *United States v. Cole* 617 F.2d 151, 153-154 (5th Cir. 1980). The purpose of such testimony, incidentally, is specifically to attack the witness' character and not to establish bias, interest, or prejudice. *See McCormick, Evidence* § 52 at 83 (2d ed. 1972). Since this is a permissible area of inquiry, the prosecution must disclose to the defense any behavior by its witnesses which arguably constitutes such "bad acts" reflecting the witness' untruthfulness.

### 3. Promises of Consideration

The government has an institutional obligation to disclose any and all consideration which it has held out to the witness or which the witness subjectively hopes for or anticipates since such consideration directly gives rise to the inference of bias or interest. *See generally United States v. Mayer* 556 F.2d 245, 248 (5th Cir. 1977) (cross-examination of a prosecution witness who has had prior dealings with the prosecution or other law enforcement officials "ought to be given the largest possible scope"; conviction reversed). A common example of such matters which must be disclosed to the defense is the making of promises or the holding out of other inducements for a witness to cooperate and testify against the defendant. *E.g., Annunziato v. Manson* 566 F.2d 410 (2d Cir. 1977). In *Giglio v. United States* 405 U.S. 150 (1972), the Supreme Court made plain that this duty is an affirmative one which the government must discharge responsibly and

that the ignorance of one prosecutor as to the promises made to a government witness by another prosecutor does not excuse the failure to disclose.

The prosecution is obliged to exercise due diligence to determine what consideration, broadly defined, it has offered to its witnesses, or bestowed upon them or which they hope or expect to receive, and to disclose this impeaching information to the defense. The obligation includes the total compensation or benefits paid to or expected by each witness. *United States v. Leja* 568 F.2d 493 (6th Cir. 1977); *United States v. Partin* 493 F.2d 750, 757-760 (5th Cir. 1974); *see United States v. Antone* 603 F.2d 566, 569-70 (5th Cir. 1979) (attorney's fees paid by state law enforcement officers cooperating in the investigation); any beneficial treatment in the tax, e.g., 21 U.S.C. §§ 7122 and 7623, or administrative realms, *e.g., United States v. Wolfson* 437 F.2d 862, 874-5 (2d Cir. 1970); any assistance in the business world, *e.g. United States v. Dicarlo* 575 F.2d 952, 958-960 (1st Cir. 1978); any assistance in avoiding prosecution by other authorities, *e.g., Azbill v. Pogue* 534 F.2d 195, 196 (9th Cir. 1976); any immunity grants, *e.g. United States v. Dillard* 419 F.Supp. 1000 (N.D. Ill 1976); omission from being named in an indictment as an unindicted co-conspirator, relief from forfeiture, *e.g., United States v. Patnes* 408 F. Supp. 440, 44-445 (S.D.N.Y. 1975); assistance in bonding out of custody, *e.g., United States v. Garza* 574 F. 2d. 298, 301-02 (5th Cir. 1978); placement in protective custody, *e.g., United States v. Librach* 520 F.2d 550 (8th Cir. 1975); special treatment while in custody, *e.g.*, *Chavis v. North Carolina*,637 F.2d 213, 225-226 (4th Cir. 1980); and status as an informer, *e.g.*, *United States v. Disston* 582 F.2d 1108 (7th Cir. 1978); *United States v. Mele* 462 F. 2d 918 (2d Cir. 1972). These examples, of course, are only intended to make the principle clear and do not exhaust the range of "consideration."

To be clearer, the prosecution should disclose such sources of bias, motive, interest, or corruption as potential financial reward by the United States, *Wheeler*

*v. United States* 351 F.2d 946 (1st Cir. 1965); or through its efforts, *United States v. McCrane* 547 F. 2d 204 (3d Cir. 1976) (per curiam); *Patriarca v. United States* 402 F.2d 314, 319 (1st Cir. 1968); or, on the other hand, the potential of civil tax liability to the United States - - even though no promises of consideration or compromise may have been made. Although such inducements are of course relevant, a witness' expectations or hopes are what ultimately tells. *United States v. Mayer*, 556 F.2d. 245, 249-50 (5th Cir. 1977); *Farkas v. United States*, 2 F.2d 644, 647 (6th Cir. 1924), cited with approval in *Alford v. United States*, 282 U.S. 687, 693 (1931).

### 4. Vulnerability and Threats

The accused is entitled to be advised of any matter which might cause a witness to color his testimony in favor of the Government out of fear or interest in self-preservation. The prosecution must disclose both the "stick" and the "carrot." *Emmett v. Rickets* 397 F. Supp. 1025, 1050 (N.D. Ga. 1975). *E.g.*, *United States v. Carter* 566 F.2d 1265, 1269, 1271 (5th Cir. 1978) (error to suppress threat that government would recommend maximum sentence against witness intended to induce his cooperation); *United States v. Sutton* 542 F.2d 1239 (4th Cir. 1976) (error not to disclose threat by FBI agent to prosecute witness intended to induce witness' cooperation); *Williams v. Griswald* 743 F. 2d 1533 (11th Cir. 1984) (allegations that the witness felt "pressure" to testify "because of intimations by the police that the charges would either by brought or dropped depending on his testimony"); *Barnard v. United States* 342 F.2d 309, 314-17 (9th Cir. 1965) (error to exclude "full exposure" of events surrounding the bringing of an additional and "bogus" intimidation of witness charge against a co-defendant which resulted in the co-defendant becoming a government witness since proof of "bias or interest in an important witness is never collateral or irrelevant").

With regard to the "stick", sometimes it is overlooked that evidence of a witness' wrongdoing, even though not amounting to a felony conviction or

comparable evidence of moral turpitude or bad character, may nonetheless be adduced when relevant to show the bias or self-interest of the witness. *McCormick, Evidence* § 40 at 78-80 (23d ed. 1972); *See United States v. Alvarez-Lopez* 559 F.2d 1155 (9th Cir. 1977); *Greene v. Wainwright* 634 F.2d 272 (5th Cir. 1981). Typical of this category is information concerning the witness' vulnerability to prosecution, parole or probation revocation, or other sanction by the government.

*See United States v. Bonanno* 430 F.2d. 1060 (2d Cir. 1970); *United States v. Padgent*, 432 F.2d 701 (2d Cir. 1970); *See also United States v. Gerard* 491 F.2d 1300, 1304 (9th Cir. 1974); *United States v. Crumley* 565 F.2d 945, 949-50 (5th Cir. 1978); *Davis v. Alaska* 415 U.S. 308 (1974). In a vigorous opinion by Chief Justice Burger, the *Davis* Court underscored the necessity and legitimacy of searching out possible biases, prejudices, and ulterior motives of the witness:

> Cross examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perception and memory, but the cross examiner has traditionally been allowed to impeach, i.e., discredit the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. . . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing the possible biases, prejudices, or ulterior motives of the witness as they may related directly to the issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. *Wigmore, Evidence* § 940, p. 775 (Chadbourne rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important

function of the constitutionally protected right of cross-examination. *Green v. McElroy*, 360 U.S. 474, 496 (1959).
415 U.S. at 316-317.

Other motivations besides fear of criminal sanctions are also material. For example, a threat to revoke citizenship, *see, e.g.*, *United States v. Haderlein* 118 F. Supp. 346 (N.D. Ill. 1953), or to deport the witness would surely qualify. Even without threats, so would the mere fact of a witness' imprisonment since he might well be "affected by fear or favor growing out of his detention." *Alford v. United States* 282 U.S. 687, 693 (1931). *See also United States v. Croucher* 532 F. 2d 1042, 1044-46 (6th Cir. 1976) (refusal to permit cross-examination of informer, a key government witness, as to prior arrests, other than ones resulting in convictions of felonies or misdemeanors involving moral turpitude; conviction reversed); *United States v. Garcia* 531 F.2d 1303, 1306-07 (5th Cir. 1976) (evidence of a witness' mere arrest by the government without further prosecution might well furnish impeaching evidence of bias or prejudice); *United States v. Gurney* 393 F. Supp. 683 (M.D. Fla. 1974) prosecution's use of legal process to compel the attendance of witnesses for the purpose of pretrial interview prohibited because it is unauthorized and it puts the witness in a compromising position conducive to involuntary cooperation with the government); *Smaltz, Tactical Considerations for Effective Representation During a Government Investigation* 16 Amer. Crim. L. Rev. 383, 398-403 (1979) (prosecution's requiring a witness to proffer and give it a preview of testimony as a condition precedent to granting him statutory immunity condemned as unauthorized and having "dramatic potential for influencing and shaping a witness' recollection and testimony to met the government's need"). "Sticks," real or only feared, appear in many shapes.

### 5. Identification of Prior Statements

The existence and identification of each occasion on which the witness has testified or otherwise narrated relative to the facts should be disclosed so that the defendant can, for example, order transcripts for testimony for use in cross-examination or investigate sources of extrinsic impeachment. *McCormick* points out:

> When a witness testifies to the facts material in a case the opponent may have available proof that the witness has previously made statements that are inconsistent with his present testimony. Under modern view of the hearsay rule, these previous statements would be admissible as substantive evidence of the fact stated.

*McCormick, Evidence* § 34 at 67 (2d. ed. 1972). See also Fed. R. Evid. 801 (d) (1) and 806. If the government has available information which may lead to proof of prior inconsistent statements or other evidence helpful to the accused, fundamental fairness requires that it be turned over to the defense without further delay.[1] *Davis v. Heyd* 479 F.2d 446 (5th Cir. 1973) (federal *habeas corpus* relief granted to state prisoner where undisclosed prior statements to prosecution witness specifically corroborated defense theory and contradicted his trial testimony). *See also Chavis. v. North Carolina* 637 F.2d 213, 223-24 (4th Cir. 1980); *Monroe v. Blackburn* 607 F.2d 148 (5th Cir. 1979); *United States ex. rel. Butler v. Maroney* 319 F. 2d 622 (3d Cir. 1963).

As the Ninth Circuit reminded us in a similar context:

---

[1] Significantly, this motion is not directly concerned with prior statements which may be producible only at the time of a witness' testimony because of the *Jencks Act* 18 U.S.C. § 3500, or because used to refresh the recollection of a witness. Fed. R. Evid. 612; see *Bradford v. United States* 271 F.2d 58 (9th Cir. 1959). Rather it seeks early disclosure of *Jencks* material only to the extent required by Due Process, *United States v. Houston* 339 F. Supp. 762, 765-66 (N.D. Ga. 1972); *United States v. Gleason* 265 F. Supp. 880, 887 (S.D.N.Y. 1967), and primarily seeks identification of statements not solely "in the possession of the United States, " 18 U.S.C. §3500 (a) and (b), so that they may be obtained from other sources.

We agree with the trial court that [the witness'] statement was in part exculpatory material and should have ben turned over to the defense. The fact that the government concluded in good faith that the evidence would not be very helpful to Miller does not excuse its failure to disclose the statement. The prosecutor is not merely an advocate for a party; he is also an administrator of justice. Considering the vast investigatory resources and powers at the government's disposal, an elemental sense of fair play demands disclosure of evidence that in any way may be exculpatory. If the government, upon request by the accused, has serious doubts about the usefulness of the evidence to the defense, the government should resolve all doubts in favor of full disclosure. Such a rule appears particularly appropriate since disclosure could cause no harm to the government while suppression could very well prejudice the defendant.
*United States v. Miller* 529 F.2d 1125, 1128 (9th Cir. 1976).

6. Identification of all Former Testimony of Special Witnesses

If the witness is an informer, accomplice, co-conspirator, participant in a witness protection program, or has previously testified, even if the government discerns no relation to the case at hand, then courts should lean in favor of admitting prior, arguably inconsistent statements to aid in evaluating testimony because of the prospect that earlier statements may be more trustworthy and less influenced than the testimony itself. *See McCormick, Evidence* § 34 at 69 (2d ed. 1972) ("A logical extension of this reasoning justifies the admission of prior testimony about an independent and unrelated event so similar to testimony now given as to arouse suspicion of fabrication.") As to crucial and inherently suspect witnesses, the accused must have the greatest possible latitude in investigation as well as in cross-examination. *See, e.g.*, *United States v. Alvarez-Lopez* 559 F. 2d 1155, 1160 (9th Cir. 1977); *United States v. Mayer* 556 F.2d 245, 248-49 (5th

Cir. 1977). The case of *Johnson v. Brewer* 521 F. 2d 556 (8th Cir. 1975), clearly illustrates this point.

In *Johnson v. Brewer*, the court granted federal habeas corpus relief to a prisoner who had been convicted on the testimony of a paid informer. At his Iowa state trial, petitioner offered to prove that the witness had lied and attempted to frame a defendant in another drug trial in Michigan. In light of the witness' *modus operandi* as an undercover agent, of his career status as an informer which depended on a continuing relationship with state authorities, of the possibilities of bias arising from the fact of the prior lie and the career status, and of to perceived unreliability of informer witnesses, the Court of Appeals concluded that the jury was entitled to know of the Michigan testimony. The exclusion of the evidence amounted to a denial of due process.

The same capacity to assess all prior testimony of expert witnesses is necessary if there is to be true confrontation and cross-examination. *See McConnell v. United States* 393 F.2d 404 (5th Cir. 1968) (defendant entitled to impeach handwriting expert by showing mistaken identification at another, albeit related, trial).

### 7. Defects in Capacity to Testify

A defendant has the right to attack the credibility of a witness against him by "showing a defect of capacity in the witness to observe, remember or recount the matters testified about." *McCormick, Evidence* § 33 at 66 (2d ed. 1972). Thus, for example, if the witness cannot hear well the jury should be told of this problem to assist it in evaluating the accuracy of what the witness says he heard. The same right applies to mental problems.

A leading case is *United States v. Partin* 493 F.2d 750, 762-65 (5th Cir. 1974) There the court of appeals reversed a conviction because the trial court excluded medical records offered as a predicate for cross-examination and would not let the jury hear the expert opinion of a psychiatrist called by the defendant.

Judge Coleman, speaking for the Court, explained the applicable general principle in these terms:

> The readily apparent principle is that the jury should, within reason, be informed of all matters affecting a witness's credibility to aid in their determination of the truth, *Walley v. State, supra*. It is just as reasonable that a jury be informed of a witness's mental incapacity at a time about which he proposes to testify as it would be for the jury to know that he then suffered an impairment of sight or hearing. It all goes to the ability to comprehend, know, and correctly relate the truth.
>
> 493 F. 2d at 762. *See generally United States v. Lindstrom* 698 F. 2d 1154, 1159-68 (11th Cir. 1983).

The same principle also applies to drug related impairment of faculties. *E.g.*, *United States v. Kinnard* 465 F.2d 566, 570-74 (D.C. Cir. 1972). And, since such mental impairments can undermine the capacity to remember and recount accurately and honestly at the time of trial, the full history right up to the present time is relevant. *Wilson v. United States* 232 U.S. 563, 568 (1914).

If the government knows that "truth serum," polygraph examination or other so-called "lie detection" techniques have been used in the preparation of witnesses, it must disclose the facts, *United States v. Hart* 344 F. Supp. 522 (E.D.N.Y. 1971), at once so that the accused can employ expert advice to analyze the impact upon the witnesses. Any argument that evidence, such as polygraph results, is inadmissable only buttresses the argument for discoverability for purposes of fairly gauging the effect of such unscientific methods upon the witness. See also Fed. R. Crim. P. 16 (a) (1) (D).

8. Further Impeaching Evidence

This request embraces all remaining information which impeaches the witness' character for veracity and his partiality (prejudice, bias, motive, interest and corruption). Thus, specifically, the Government cannot suppress, and must

disclose, evidence of chronic perjury by the witness. *See generally Mesarosh v. United States* 352 U.S. 1 (1956). A witness' appetite for drugs must be disclosed. So too must his distaste for a defendant, *see United States v. Haggett* 438 F.2d 396, 400 (2d Cir.1971), or for those of his ilk, *see United States v. Kartman* 417 F. 2d 893, 897 (9th Cir. 1969) (since such feelings are akin to prejudice and/or bias against the defendant.) Likewise, if the witness himself is under investigation by the government, his partiality, may suffer under the pressure. *See Greene v. Wainwright* 634 F.2d 272 (5th Cir. 1981); *United States v. Hitchmon* 609 F.2d 1098 (5th Cir. 1979).

### 9. Non-witness Declarant

If the government seeks to make is proof against the defendant by introducing the declarations of non-witnesses, he is still permitted to impeach the declarant. Fed. R. Evid. 806.[2] Indeed, such statements in the nature of common law hearsay authorize impeachment in the same way as if the declarant were offered on the witness stand. *See United States v. Bovain* 708 F.2d 606, 613-14 (11th Cir. 1983) (under Rule 806, testimony of hearsay declarant should be treated like that of a witness who has testified at trial; therefore evidence of declarant's prior convictions is admissible for impeachment purposes even though declarant is a defendant on trial who has chosen not to testify); *United States v. Brainard* 690 F.2d 1117, 1127-28 (4th Cir. 1982) (Widener, J., concurring) (when hearsay statements are admitted into evidence, declarant's credibility is put in

---

[2]  Fed R. Evid. 806 provides, in pertinent part: "When a hearsay statement-or a statement defined in Rule 801 (d) (2), (C), (D) or (E); has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by an evidence which would be admissible for those purposes if declarant had testified as a witness." "When a hearsay statement- or a statement described in Rule 801(d)(2)(C), (D), or (E)- has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant as a witness, the party may examine the declarant on the statement as if on cross-examination."

issue, and Rule 806 permits impeachment by prior or subsequent inconsistent statements attributable to declarant; failure to admit such statements is reversible error); *United States v. Glenn* 473 F. 2d 191, 195 & n.l. (D.C. Cir. 1972) (suggesting that under proposed Rule 806 an excited utterance, admitted as a hearsay exception under proposed Rule 803(2) , could be attacked by proof of the high percentage of alcohol in the declarant's blood contemporaneous to her making the statement); *See generally 3 Wigmore, Evidence* § 884 at 376-77 (3d ed. 1940); *McCormick, Evidence* § 37 at 73-74 (2d ed. 1972).

The principle is simple. The Advisory Committee's Note to Rule 806 puts it this way:

> The declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609. . . .

Accordingly, "in fairness," the prosecution should be required to disclose the requested impeaching information.

### 10. Henthorn Material

In *United States v. Cadet* 727 F.2d 1454 (9th Cir. 1984), the Court of Appeals held that such *Brady* material may be contained within the personnel files of a government witness, such as a police officer. Such material could include previous acts of misconduct, dishonesty, or facts constituting proof of bias, and constitutes *Giglio* material. In *United States v. Henthorn* 931 F.2d 29 (9th Cir. 1991), the Ninth Circuit held that upon request, the government has an obligation to review police witness personnel files for a determination as to whether possible *Brady* material exists, and turn over such material if it does exist. *Id.* at 30-31. In the event of the prosecution's discovery of questionable material the files should be submitted to the Court for an *in camera* review. *Id.*

Mr. Walther-Meade respectfully requests that the Court order the government to undertake the review of the personnel files for these witnesses for *Brady* and *Giglio* material, and to seek evidence of acts of dishonesty or false statements, evidence of mental or emotional disorder or instability, previous failures to be candid in court testimony, previous acts of dishonesty of any kind, evidence of bias, prejudice, interest, or corruption, or any evidence of a physical or mental infirmity or lack of capacity.

## IV. CONCLUSION

The defendant has the right to potentially exculpatory information in the government's possession. He is hereby requesting that information. He respectfully requests that this Court order the government to turn over any and all material to which they are entitled, pursuant to *Brady* and *Giglio*, and as specifically set forth in the categories of information sought by this motion.

DATED:  June 1, 2023                    Respectfully submitted,

                                                 *s/ Eugene Iredale*
                                                 Eugene Iredale
                                                 Attorney for Defendant
                                                 GEORGE WALTHER-MEADE